## Case No. 12,246.

### SALA et al. v. NEW ORLEANS et al.

[2 Woods. 188.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1875.

CONSTITUTIONAL LAW — ACTS IMPAIRING OBLIGATIONS OF CONTRACTS — CITY BONDS — CORPORATIONS—STOCKOWNERS.

1. The charter of a bank authorized it to construct water-works for the city of New Orleans, and declared that after the expiration of thirty-five years, it should be lawful for the city to purchase said water-works on certain prescribed terms, and pay for them in its bonds, and the bank was, on the election of the city to purchase, required to sell on the terms prescribed: Held that this charter was a contract with the bank and that any act of the legislature afterwards passed imposing onerous conditions upon the issue of bonds by the city, so far as they might apply to bonds to be issued in payment for the water-works, impaired the obligation of the contract with the bank and was void.

2. Where the contract for the purchase of the water-works was executed and the city got the water-works and paid its bonds to the bank therefor, and the city did not deny its obligation to pay the bonds, nor threaten to do so, the bank could not repudiate the contract of sale on account of any supposed infirmity in the bonds.

3. The city having authority to issue the bonds, they are good in the hands of bona fide holders for value, whether the conditions precedent to their issue were observed by the city or not.

4. Therefore, parties holding only a portion of the bonds issued by the city in payment for the water-works could not undertake to repudiate the contract of sale without the consent of all the other holders of such bonds.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

5. The ownership of the bonds issued in payment for the water-works did not make the holders thereof stockholders in the bank from which the water-works were purchased.

6. The ownership of stock in an incorporated company does not give the stockholders any title to the property of the company.

In equity. Heard on pleadings, proofs and arguments of counsel for final decree. The case as made by the pleadings and evidence was in substance as follows: The complainants [Pablo Sala and others] were holders of bonds of the par value of $116,300, issued by the city of New Orleans, and dated January 1, 1869—known as water-works bonds—and they filed the bill for themselves and all holders of similar bonds who might consent to become parties and contribute to the expenses of the suit. On the 1st day of April, 1833, the legislature of Louisiana passed an act [Laws 1831-32, p. 151] to incorporate the Commercial Bank of New Orleans, and by the same act, conferred on the bank the exclusive privilege of supplying the inhabitants and city of New Orleans with water, from the Mississippi river, by means of pipes, engines, and other machinery. Said act provided, however, that at any time after the expiration of thirty-five years it should be lawful for the city of New Orleans to purchase from said bank the water-works constructed by it, and that said bank should not refuse to sell the works aforesaid, on the terms prescribed by the act. By said act it was further provided that the price to be paid by the city of New Orleans for the water-works should be fixed by arbitrators, whose decision was to be conclusive, and the price so fixed was to be paid in the bonds of the mayor, aldermen and inhabitants of New Orleans, bearing five per cent. interest, and payable semi-annually, and on such payment being made the water-works were to be delivered to the city. On the 27th of March, 1868, the city council of New Orleans resolved to purchase said water-works on the terms prescribed by the act of 1833. The works were appraised by arbitrators at the price of $2,000,000, payable in city bonds. In pursuance of said award, the city and the Commercial Bank agreed that the said amount should be paid as follows: As the city was a stockholder in the bank to the amount of a half million of dollars, the city was allowed a credit for that amount on the said purchase price, and an additional credit of $106,600, that sum being the share of the city as a stockholder in said bank in a sinking fund belonging to the bank. After crediting these sums to the city, there remained a balance of said purchase money of $1,393,400, payable in city bonds. On the 19th of January, 1869, the bank, by an act passed before a notary public, sold and delivered the water-works to the city, and the said balance due on the purchase price thereof was paid to the bank in city bonds, having thirty years to run. These bonds were authorized by an act of the legislature, approved July 22, 1868 [Laws 1868, p. 6], which simply empowered the city to execute and deliver to the bank the bonds of the city in payment for the balance due on the purchase of the water-works, pursuant to the provisions of the said act of 1833, whenever there should have been an award as prescribed in said act, any law in force to the contrary notwithstanding. After the passage of the act of 1833, to wit, on February 23, 1852, the legislature passed an act by which the city was prohibited from issuing any bonds or contracting any debt, unless the same should be authorized by the vote of a majority of the qualified electors of the city, and which further declared that no ordinance of the city creating a debt or loan should be valid unless such ordinance should provide for the full payment of such debt or loan, both principal and interest. Acts 1852, p. 42. No. 72. Afterwards, by an act approved April 29, 1853 (Sess. Acts 1853, p. 234, No. 258). the city of New Orleans was again prohibited from contracting any debt without providing in the ordinance creating the debt, for its full payment. This provision was reënacted by act No. 263, approved March 15, 1855 [Laws 1855, p. 325]. These acts of 1852, 1853 and 1855, it is alleged, were in full force until long after the issue of said water-works bonds to the bank.

The resolutions of the city council of New Orleans, providing for the purchase of said water-works, contained no provision for the payment of the principal and interest of the bonds delivered to the bank as the price thereof, and no vote was ever taken on the question of contracting the debt and issuing the bonds. It was alleged that the bonds issued by the city in payment for said water-works were and are null and void, because the provisions of the acts of 1852, 1853 and 1855, before referred to, were not observed; that the city had no authority to issue said bonds, and therefore paid nothing for the water-works, and obtained possession thereof without consideration; that the city had no power to make the contract of sale, and said contract should be rescinded and annulled, and said water-works declared to be the property of said bank, its stockholders and their assigns or representatives. The bill further alleged that the said one million three hundred and ninety-three thousand four hundred dollars of city bonds were distributed among the stockholders of the bank in proportion to their stock, but the interest of the city in said bank was balanced by a credit allowed on the purchase price of the water-works, as above set forth. Since the distribution of said bonds, which took place in 1869, the said bank had been deemed by its officers defunct, and there was no board of directors competent to manage its affairs, and no quorum of the late board could be convoked, on account of the death or absence of its members. It was charged that the city of New Orleans was negotiating for the sale or lease of said water-works, and if such

sale or lease was made, that it would work irreparable injury to complainants.

The bonds issued to the bank in payment for the water-works were widely distributed throughout the United States and Europe. The city of New Orleans had paid all interest on said water-works bonds due prior to January 1, 1875, and had paid the interest due January 1, 1875, to all persons who had presented their coupons for payment; but this last named interest was not paid until June, 1875, and the interest due July 1, 1875, and January 1, 1876, had not been paid. The reason for this failure to pay was want of funds to make the payment. It was claimed that those bondholders who were not stockholders in the bank at the time of the distribution of the bonds to the stockholders, were in equity entitled to all the rights vested in the stockholders of the Commercial Bank, who in the first instance received said bonds from the city. After the failure of the city to pay the interest due January 1, 1875, the complainants requested Jules Labitut, who was the last president of the Commercial Bank, to convoke a meeting of the persons who composed the last board of directors, to take legal steps in the name of the bank to rescind the sale made to the city of the waterworks, and to recover possession of the same, to which Labitut replied that he could not comply, because a quorum of the late board could not be called together, on account of the death of some members and the removal from the state of others. Several holders of the water-works bonds, whose bonds in the aggregate amount to $220,000, were made defendants to the bill. The prayer of the bill was that the city of New Orleans might be enjoined from selling, leasing or hypothecating the water-works, and that a receiver might be appointed to take possession of and conduct the same, collect and disburse the revenues under the order of the court, and hold the water-works until the final hearing of the cause. The bill prayed for no ultimate disposition of the waterworks, nor did it contain any prayer for general relief.

The answer of the city of New Orleans denied that the act of July 22, 1868, by which the city was authorized to issue its bonds in payment for the water-works, was void; denied that the act of February 23, 1852, or the act of April 29, 1853, or the act of March 15, 1855, prohibited the city from issuing such bonds as those issued in payment for the water-works, and averred that these acts were passed long subsequent to the act incorporating the Commercial Bank and authorizing the city to purchase the water-works and issue its bonds therefor, and that the provisions of said last named act were not inconsistent with or repealed by the provisions of the former acts. That the act incorporating the bank was an act which the legislature had the power to enact; that it had never been repealed; that the provision for the sale by

the bank to the city of the water-works had all the force and effect of a contract, not only between the state and the city but between the bank and the state, which could not be affected by subsequent legislation. The answer denied that the water-works bonds issued by the city were void, but on the contrary averred that they were valid and binding obligations and were received by the bank in full payment of the purchase price of the water-works, and were the identical consideration for which the bank contracted. The answer further alleged that since the year 1869, when the charter of the bank expired, it has had no corporate existence either in law or in fact; that it has neither officers, board of directors, nor stockholders, and cannot be revived, and no person whatever has the right to represent it; and denied that those holders of water-works bonds who were not stockholders in the bank were in any manner subrogated to the rights of the stockholders who in the first instance received the bonds. The answer further insisted that there was no equity in the bill and that it ought on that ground to be dismissed.

Thomas J. Semmes and Robert Mott, for complainants, who cited Oneida Bank v. Ontario Bank, 21 N. Y. 497; Tracy v. Talmage, 14 N. Y. 162; City of Memphis v. Brown, 20 Wall. [87 U. S.] 319; McCracken v. City of San Francisco, 16 Cal. 628.

B. F. Jonas, City Atty., for defendants.

WOODS, Circuit Judge. As the cause is now submitted for final decree, it is too late to grant that part of the prayer of the bill which asks for a receiver to take possession and charge of the water-works until the final disposition of the case. The only other prayer is that the city may be restrained from selling, leasing or hypothecating the water-works. The theory of the complainants seems to be that the bonds issued by the city in payment for the water-works, being absolutely void for want of power in the city to issue the bonds and therefore to make the contract of sale, in which the issue of bonds formed a necessary stipulation, the sale was void and the Commercial Bank still remained the owner of the water-works; that the present holders of the city water-works bonds are subrogated to the rights and property of the bank, and the city ought to be enjoined from any act which would embarrass the title of the bondholders. In my judgment, the theory of the complainants is unsound.

The act of April 1, 1833, "to incorporate the Commercial Bank of New Orleans," and which constitutes the charter of the bank, with all its material provisions, is a contract between the state and the bank, the obligation of which cannot be impaired by subsequent legislation. Dartmouth College v. Woodward, 4 Wheat. [17 U. S.] 518; Providence Bank v. Billings, 4 Pet. [29 U. S.] 514; State Bank of Ohio v. Knoop, 16 How. [57 U.

S.] 369; Dodge v. Woolsey, 18 How. [59 U. S.] 331; Jefferson Branch Bank v. Skelly, 1 Black [66 U. S.] 436; The Binghampton Bridge, 3 Wall. [70 U. S.] 51; Allen v. Mc-Kean [Case No. 229]. As already seen, the charter provided, that at the expiration of thirty-five years, the city of New Orleans might purchase from the bank its water-works at an appraised value, and the bank was at the time specified, and on the terms specified, in case the city elected to purchase, required to sell. And section 42 of the act of incorporation declared, that the amount of the purchase price should be payable in the bonds of the city of New Orleans, bearing interest at the rate of five per cent. per annum, payable semi-annually, redeemable in not less than ten nor more than thirty years.

It seems to me, that the power of the city to issue bonds, in payment of the purchase money of the water-works, was clearly given by the charter of the Commercial Bank. It is just as clear, that the power of the city to buy the water-works and to issue its bonds therefor, was a provision of the charter of the bank, beneficial to the bank, and that it formed a part of the contract of the state with the bank, expressed in the charter of the bank. The state could not take away from the city the power of purchasing the water-works without interfering with the charter of the bank in a material particular. It seems to me clear, that after the thirty-five years from the passage of the charter have expired, and the city has, through its proper officers, elected to purchase the water-works, an act of the legislature forbidding the issue of the bonds, or imposing onerous conditions upon their issue, not in force at the date of the charter of the bank, would be a direct and palpable invasion of the chartered privileges of the bank. As soon as the city made its election to purchase, the right of the bank to sell the water works became absolute. The state had agreed, that under such circumstances the city should have power to purchase, and should purchase, and the bank should be compelled to sell, and should, in fact, have the right to sell, and should receive city bonds in payment, which bonds the city was authorized to issue. Any legislation which interfered with these powers and obligations, or any material terms thereof, the state was incompetent to pass. If, therefore, the acts of 1852, 1853 and 1855, were intended to impose conditions upon the issue of water-works bonds, not contained in the charter of the bank, they impaired the obligation of the contract between the state and the bank contained in the charter, and were, therefore, to that extent unconstitutional and ineffectual. The city, therefore, had power to issue the water-works bonds, they are not void, and the superstructure of the complainants, built on the theory that they were void, falls to the ground.

Another and conclusive answer to the complainants' claims is this: The bank agreed to take the city bonds for its water-works. The contract was executed and the exact consideration paid. The bank got the bonds and the city the water-works. The city has never repudiated the bonds or denied its obligation to pay them, principal and interest, and does not propose to repudiate them. Until it does so, the bank cannot rescind the contract and ask to have its property restored.

Another difficulty with the complainants' case is, that the bonds are valid and binding on the city in the hands of bona fide holders, whether the conditions precedent to their issue were observed or not. Van Hostrup v. Madison, 1 Wall. [68 U. S.] 291; Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 175. The city cannot, therefore, repudiate the bonds held by bona fide purchasers, if it would, and all holders are presumed to be bona fide.

The complainants and the defendants, who concur in the objects of the bill, only hold $400,000 of the water-works bonds, and there are nearly a million of other water-works bonds scattered over the United States and Europe. How does this court know whether this large majority of bondholders is willing to take back the water-works and surrender their bonds? The bonds are good in their hands and binding on the city.

Ought the possession of the city of its water-works, or its title thereto, to be interfered with until the bondholders express, at least, a willingness to give up the city's bonds which were paid as the purchase price of the property? Are not the parties to this bill assuming a good deal, when they, representing $400,000 of bonds, undertake to repudiate the contract of sale without consulting the holders of the other $900,000 worth of bonds, constituting a large majority of the whole? Suppose the holders of these $900,000 of bonds prefer their bonds to the water-works, and hold on to their bonds and insist on payment as they have the right to do, where does this court get the power to rescind their contract for them, and compel them to give up their bonds and take the water-works against their protest? It must also be borne in mind, that the city itself is an owner of the water-works to the extent of $606,000 in $2,000,000. Are we to pay no attention to this circumstance in passing upon the rights of the city?

But there are other difficulties in the way of any relief on this bill. The great mass of bondholders were not, at the date of the purchase, stockholders in the Commercial Bank, and never were. They hold city bonds, not stock in the Commercial Bank. And if the city had repudiated the bonds the day after their issue, that would not have made the holders of city bonds stockholders in the bank. And if it had that effect, neither they nor the original stockholders would have acquired any rights in the property of the Commercial Bank. The ownership of stock does not give the stockholders any title to the property of the corporation. Morgan v. Railroad Co. [Case No. 9,806]. The water-works

belong either to the city of New Orleans or to the Commercial Bank. But the latter is dead beyond resuscitation. It expired in 1869 by the terms of its charter,. when it sold out its water-works. It may have made a bad sale but a sale was made. The bank got precisely what it contracted for. It has used the consideration paid for its property by distributing it among its stockholders, and having thus accomplished the purpose of its creation, it ceased to exist. It has been dead seven years. It has no charter, no officers, no board of directors, no property, no stock, no stockholders. This court cannot breathe into it the breath of life, and the relief contemplated by the bill can be granted only by the resuscitation of this defunct corporation.

I do not think the complainants are entitled to any relief upon the case made by the bill, least of all the relief which they ask. The bill must be dismissed at complainants' costs.